Matthew Juran for the Appellant ICON. May it please the Court. The Lower District Court took the claims of the 853 patent and changed the scope of the patent and the claims by taking what is essentially a server claim as limited by the preamble of Claim 1 and changed it to instead include not only a server but also a remote computer that has a physical monitor with a visual display. The District Court's claim construction of the term screen display as a screen visible on the client is the crux of this case. That construction is erroneous based on the plain language of the claims and the understanding in the context of the specification of the 853 patent. The District Court's erroneous construction of screen display also affects the other claim constructions at issue here today which is the commercial area and the navigation of the screen display. The District Court's errors in claim construction were also extrapolated into its erroneous conclusion on summary judgment in favor of travelocity. To get into the... When you look at the claim term screen display and you are arguing that that does not mean that the display is before the remote user. That is correct, Your Honor. So the rest of the patent, this whole patent is about creating a virtual reality landscape of sorts. The claim is directed to the operation and collection of information and images from the database within the server and that collection of information is the screen display. The lower District Court took that a step further and required that the client computer, which is a remote... What does display mean? The District Court took and used a dictionary definition and said a visual screen, a monitor. And the District Court also looked at the word screen and said, well, that indicates that it's a screen at this remote computer. However, when you look at the claim language itself, the screen display in conjunction, those two words, it means something different than a remote computer that is remote from the server with a visual display that a user is going to be sitting there visually perceiving. The claims are strictly limited to what the server is, its configuration, and how it generates this information from its database. When the judge and the lower court took generating a screen display and added the requirement that the screen be visible at the client, he divorced the scope of the claim from just being directed to the server aspect of a server client system and instead required it that it would be the entire server client system, not only just the server. I mean, it says a screen display for the client. I'm not following you. What other screen display could it be? That would be generating a screen display for the client, not that it would be actually transmitted to the client or that it requires a visual perception by a user of the remote client. The element begins the server communicating to the client an interface for use in requesting a search. So, the server has to communicate with the client. The claim requires it. So, it's not just server side. I mean, this server is communicating to the client. I'm not following you. That's the...the claim is drafted from the point of view of the server, the server's function and structure. And it does have that language in there where the client is...it's transmitted to the client, but it does not require that the client receive that as a explicit limitation. When you look at figure three and you have that sequence of steps, the first step is that the client connects to the server. Yes, that's part of the method. That's...when you go over to claim 11, which is the method steps. So, generating a screen display for the client and if the first step in the method is that the client connects to the server, then isn't the screen display before the server? The screen display is generated by the server. It's that information. What the remote computer has would be a monitor. And the judge at the district court level took the screen display that's generated by the information within the server and then required that additional step, which is not present in claim one, and required that that remote computer actually receive this information, process it, and present it to a client, to a user of the client computer. That's what the claim says, for a client, for the client. That's...it's ICON's position that that is intentional language, that the generated screen display is for a client, not that the client will actually receive that screen display as the claim is written. The claims are directed specifically to the server, and that server's operation. The screen display construction is done by the lower court as a screen visible on the client, presents some contradictions, which highlights the error in the district court's claim constructions, particularly when you get down to the graphics items arranged to provide the appearance of at least a commercial area, at least some of those graphics items having the appearance of storefronts. The district court took that and required that the images are arranged into a scene resembling an area having businesses. So you have the whole screen display, and the district court took that screen display as a visible screen on a client, and then required that there's a scene, which is a subset of that visible screen. And that creates a contradiction when you get to the next term, which is the navigation, which is specifically required to be that the screen display is the navigable portion of the claim. However, the district court took scene and injected that into the next phrase as screen visible on the client that is able to permit movement through the scene. So that creates a contradiction, Your Honor, where the plain language of the claim says screen display being navigable, and the district court judge took that language and then changed it to be a scene that is navigable at the screen display on this remote computer. How do we even get to that point? If we were to accept your construction for generating a screen display, which you're saying it does not necessarily have to display before a remote user, but now you're saying that the remote user, the court erred in how it construed it as being navigable, because the remote user using the screen display has to navigate before that web page versus a display. Within the district court's constructions that were erroneous, the contradiction there about the navigation of the scene rather than the screen display highlights the errors that the district court made by taking screen display, which based on the context of the 853 patent, is that information generated by the server, which is intended to be transmitted to a client, but the claim does not require that transmission of the gathered information. And the district court took that and instead required that there's this screen on this remote computer and that you're going to navigate... Information is not transmitted to the end user. Does this invention work? Yes. This invention is directed to the operation of the server. There might be commercial embodiments where you would want to take that and provide it to a client computer. However, ICON's claims are directed to the operation of the server itself, the function, and the structure. So ICON would ask that this court reverse each of those three claim constructions by the district court, and for screen display, construe that to mean a collection of data or information used in constructing a visual display. That's more intentional language about where this claim might end up, but it keeps it within the context that this is a server claim. Let me ask you just again, just to be clear. How can a client navigate a screen display if the screen display is never communicated to the client? Well, and that's why ICON has proposed... That's why we propose that the navigation term be construed correctly as a screen display that information includes additional information enabling interactive direction at the client to reveal graphics items adjacent to those being displayed. So the server's generating these documents, such as an HTML document, which in a commercial embodiment would be received by a remote client computer. That computer would interpret the information generated by the server and then present a display to a client, a user of the client. However, these claims are strictly limited to a server as shown in the preamble. It's a server configured to communicate with a client. Okay, well, whether it's sent to the client or not, though, it has to have graphic images, the appearance of a commercial area. Some of them have to look like storefronts, and their argument is that you don't have those. You only have them below, not part of the That is correct, Your Honor. The characterization of the final image, which was used as evidence of the operation and structure of the server and how it generated that document, depicts the Travelocity webpage as the final product as having a map view, which is a map, and then a list of the hotels. And then the map has embedded within the map as the judge construed it, the scene, has pop-ups when you select certain spots on the map that associate with the hotels listed below. Well, I guess the problem is, their argument is, that the pop-ups that you're referring to are not graphic items arranged to provide the appearance of part of the commercial area. Because the only thing that's part of the commercial area are the pin things. The pin things that you could click on and then get the pop-up. But the pop-up and the content in the pop-up is not part of the appearance, graphic items arranged to provide the appearance of at least part of a commercial area. Some of those graphic items have to be storefronts. Nothing on their map view is a storefront until you click on that link and then you get a pop-up. And so the problem is, as I understand their argument and the district court found, that that pop-up is not both part of the appearance of the commercial area and showing a storefront. I mean, it shows a storefront, but it's not part of that commercial area. So, how do you, even if I were to buy into all of your claims and constructions, I don't see how that changes the result. It changes the results, Your Honor, because the district court made that factual finding and took it away from the purview of a jury about whether or not the pop-ups that appear within the map boundaries are actually a subset of the images that comprise the map as defined by the court. The other issue is that the district court's determination of what the website presented as a final product as generated by the server, the information is compiled and presented from the server and all that information is compiled within there. If you use ICONS Claim Construction... It just talks about what has to appear, right? The appearance, the storefront, the appearance of commercial areas. Yes, and the server... It can't just be in there, it has to appear as well. The server has those particular files, such as the JPEGs or the GIF format. That's great, but are they appearing? Are they appearing in that display? In a final product, they would appear... They would be visually perceived by somebody at a remote computer. Only if they click on the pin site. Correct, but the information enabling those particular pop-ups are embedded within the website and information that's generated by the server. We're into rebuttal time. Do you want to save the rest? I will reserve the rest for rebuttal. Can you tell me how to pronounce your name, sir? Melsheimer. Mr. Melsheimer. Good morning. You may please the court. The district court here properly granted summary judgment of non-infringement and this court should affirm. The summary judgment focused on a clause common to all the asserted claims, and Judge Moore, you've been speaking of this morning, and that clause is graphics items arranged to provide the appearance of at least part of a commercial area, at least some of the graphics items having the appearance of storefronts. It's not a complicated clause. The district court construed it to mean images arranged into a scene resembling an area having businesses, at least some of the images having the look of the front exterior of buildings. The plain wording of the claim compels the conclusion reached by the district court, that is, that there is no factual dispute as to non-infringement. The graphic items, which the court described as images, must provide the appearance of a commercial area or an area having businesses, and some of those graphic items, some of those images must be storefronts or the exterior of businesses. Thus, some of the graphics, some of the graphic items have a dual purpose. They provide the appearance of a commercial area, and some of them are storefronts. The district court used the term subset to describe this claim language. It's a subset, it's a dual purpose, it's certainly clear from the claim language. ICON does not challenge this claim construction on appeal. They don't say that the court got this claim construction wrong. So really the only issue is, is there a factual dispute in the record from which a reasonable jury could have concluded that there was infringement, and the district court concluded there was not. It rightly concluded that ICON could identify nothing in the Travelocity System that satisfied this clause in all the claims, in all the asserted claims. And ICON doesn't try to do so in argument, and they didn't try to do so in their briefs. If the pins on the Travelocity map were images of the hotels, then would Travelocity infringe? I think that would be a closer case, Judge Raina, but you'd still have to make the argument that they were arranged in the appearance of a commercial area, as opposed to just simply pins in a map. But if they had little bitty pictures on them, and each one was a picture on the pin, I think that would be a closer question of infringement. It would depend on how it was implemented, I suspect. But certainly that's not the case we have here, because we've got a map view with hotels listed on the bottom, and then you've got a view where you click on the map and you get the images of the hotels. Is it true that DOE is not on the table? Are you really here? It's not, Your Honor. The district court concluded that the plaintiff's expert did not raise a material fact issue on DOE. I guess the key for me was I didn't really see it in their blue brief, in the appeal of DOE in particular. We didn't see it either, Your Honor, and the district court rightly concluded that they did not raise a fact issue on DOE, because what they'd have to do is you'd essentially have to go through the limitation by limitation basis, and of course what they do on that is they read out this whole notion that the graphic items that are images that create the appearance of storefront, that create the appearance of the commercial area, have to be storefronts. They just say, well, if there's a commercial area and there's storefronts, then somehow that's infringing. They didn't do that analysis, and that would not be proper under DOE in any event. Our brief on pages 12 and 13 lays out what happens when a user searches for a hotel on Travelocity. We've been talking about it briefly this morning. There are really only two views in the record of the system. Page 12 of our brief has this highway map and a display of search results. So even if the map, the highway map on the top half of the screen, is a commercial area, per the claims, and I think you're hard-pressed to say it is, because it's simply a highway map with pins in various locations. Is that something having the appearance of a commercial area? I submit it's not. In any event, this view provides no images of storefronts that provide the appearance of at least part of the commercial area. So the map view on page 12 cannot satisfy the claim limitation as the District Court so found. The other view in the record is on page 13 of our brief. It shows what happens when a user clicks on one of the pins on the map for a hotel location. What happens there is there's a pop-up of a rectangular black box that appears. It contains information about the hotel, its rating, its price, as well as a picture all overlaid in a black rectangular box on top of a highway map. This cannot satisfy the claim limitation either, as the District Court correctly held, because the black boxes are not arranged, they're not graphic items or images arranged to provide the appearance of a commercial area, and no reasonable juror could conclude otherwise. They are black rectangles overlaying a highway map. If anything, these black boxes obscure or detract from the appearance of the map being a commercial area, even if you were to conclude that it was a commercial area. Why couldn't a map give the appearance of a commercial area? If you have, for example, let's say the bay around Cancun, and that map pops up, and you have hotels all up and down that little bay, why wouldn't that give the appearance of a commercial area? I think it might, Your Honor, if it was a map of a particular region that had listings of hotels. Again, you'd have to have graphic items providing the appearance of a commercial area, and I think your map might satisfy that, because at least you'd be focused on a particular area, and you'd have the hotels. Here, all you've got is a standard highway map around, in this example, DFW Airport, and there are simply pins that you don't even know what they are until you click on them, and then the rectangular black box appears with the additional information. I submit that the conclusion the District Court raised, reached, with respect to both these views, is confirmed by stepping back and seeing what this patent is all about. As you did, Judge Reyna, in one of your first questions, we're not suggesting that the court read limitations into the claims, but, of course, the specification can't be ignored. This is a patent that describes creating a yellow pages concept, where there is a visual look of a shopping area. The elevator metaphor used in the patent describes moving through a virtual store. There's images in the patent of a street view of stores arranged in a row. The patent aims to create a virtual reality-like experience, whereby the user is immersed in a visual shopping experience. You can see that in Columns 9. Column 9 of the patent lines 30 to 52. That's the alleged inventiveness of the 853 patent. It's not a mere electronic yellow pages. It's visual yellow pages with graphic items used to create the appearance of a shopping area or a business district. And I submit that neither the map view, the original map view, or the map view with the pop-ups can satisfy graphic items arranged to provide the appearance of a commercial area with at least some of those graphic items being storefronts. Now, what ICON's argument, trying to defeat summary judgment below, was really a re-arguing of the court's claim construction in this case, of this clause that we've been discussing, the graphics items clause. That construction would have had the district court ignore the plain terms of the claims, that the graphic items, the images, provide the appearance of a commercial area, and that they include images that are storefronts. Now, as we noted in our brief, ICON did not appeal this portion of the claim construction, so we submit under this court's cases that any argument about that is waived. And even if the court, even if ICON had properly appealed the claim construction, we think the district court got it right. It's consistent with the plain language, and it's consistent with what the patent is trying to get at, this virtual reality-like situation. Now, the terms challenged by ICON and argued just moments ago played no part in the court's summary judgment ruling. So, in our view, they are simply not relevant to this court's view of the appeal. The terms they argued are screen display, which the court described as screen visible on the client. Now, ICON says, well, these are server-side claims, so it makes what the user sees irrelevant. And certainly the claims are drafted in a server-side way, but both parties throughout the course of this case have looked at, well, what is happening in the output that's going to tell us what's happening at the server? They haven't made any argument, and it would be a stranger argument, to make that the code is doing one thing, but what the user sees is totally different. That wouldn't seem to make any sense. And as you point out, Judge, that would even suggest that maybe the invention wouldn't work. You wouldn't want to have a code that was not creating the images that you wanted the user to see. But in any event, the term screen display has two words in it that imply vision or something visual. A screen and something that is displayed, which is to make visible or to make apparent. It's not limited to a web page, as they argue. How could it be a screen display? Nothing about that term suggests that it's limited to a web page. And if you look at the patent in Figures 5 through 10, every one of the figures there is something that the user sees. They also raise the claim term clause screen display being navigable to reveal graphic items adjacent to those that are displayed. Navigable in the context of the patent that creates a visual yellow pages. A virtual reality means to move through or around. It's common sense. It's also supported by the specification of the patent. But neither of these terms, again, affects what the court decided on summary judgment. Which is, in the record, there was simply nothing to create a fact issue that there was anything displayed to the user or in the code. And so they argue in their brief that there's all these issues in the code somehow. That there's stuff happening in the code that's different from what's shown to the user. It doesn't matter. The district court found they had preserved nothing on that because they hadn't identified anything in the code that the court should look at. And indeed, it doesn't make any sense that the code would be doing something different than what the user sees. ICON failed to raise a genuine issue of material fact on an essential element of all these certain claims. As such, the summary judgment of non-infringement was warranted that this court should affirm. If the court has additional questions, I'm happy to take them. If not, I will yield the balance of my time. Thank you, Mr. Nashimer. Thank you, Your Honor. Mr. Jurin. I'd like to hit on just a few of the points that Mr. Milshimer presented a second ago. One of those was the inference that this is a virtual reality system. I would like to direct the court to the Joint Appendix, page 63, column 11, 5 through 8, which is claim 9 of the 853 patent. That is the only claim in the 853 patent that even uses the words virtual reality or virtual reality scene. It is also the only claim to use the word itself, scene, which the district court injected into claim 1, 10, and 11, the only independent claims of the 853 patent. The district court's grant of summary judgment was on the basis that the parties did not dispute the final operational output of the Travelocity webpage, the final product at a remote client computer within the judge's claim construction. This was actually disputed by the parties. The ICON disputed the relevant facts regarding Travelocity's server, processes, and the functionality, as recognized in the district court's order at pages 8 through 9, and in ICON's response to the motion for summary judgment, which is at Appendix 822 through 26. That part of the record presents that ICON actually disputed whether or not these images that were contained within the boundaries of that map, the scene, as defined by the lower court, were a subset of the scene, or if they were, as Travelocity put it, wholly separate, that they're just simply overlaid. But when you get down to it, they are embedded within the map, and that map contains the information to enable those pop-ups to appear within the boundaries of those maps. Dr. Talfik also presented evidence, Travelocity had indicated that Dr. Talfik tried to piecemeal these two elements that are combined for purposes of the commercial area and the businesses. And Dr. Talfik, in his initial report, did look at it on an element-by-element basis. But in his declaration attached to the response for motion for summary judgment, at Appendix 897 through A900, Dr. Talfik explains, in conjunction, how those two terms are satisfied by Travelocity's servers, whether it's the list pop-up, or whether it's the list or the pop-ups within the map. You're over your time, and I've got to keep things even, so do you have a final thought? The final thought, Your Honor, for ICON, would be that this Court vacate the District Court's erroneous claim constructions, enter ICON's requested claim constructions for screen display, commercial area, navigation, reverse the erroneously granted summary judgment, and remand for further proceedings in accordance with a proper claim construction from this Court. And I thank the Court for its time. The case is taken under submission. I thank both counsels.